LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Suite 500 Sirena Plaza
238 Archbishop Flores Street
Agana, Guam 96910
PHONE: 472-7332
FAX: 472-7334

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIMINAL CASE NO. 08-00008 |
| Plaintiff, | ) |
| vs. | ) **RESPONSE TO DEFENDANT'S** |
| | ) **MOTION TO SUPPRESS STATEMENTS** |
| FREDA ESEUN, | ) |
| Defendant. | ) |

Comes now the plaintiff, United States of America, by and through its undersigned attorney, and moves this Honorable Court to deny the defendant Freda Eseun's Motion to Suppress. This opposition is based on the following memorandum of points and authorities, the record in the Court's files, and any oral arguments and evidence that will be produced at the hearing in this matter.

**STATEMENT OF FACTS**

On January 13, 2008, at 12:15 a.m., Ms. Elizabeth Aizawa and a young Chuukese woman identified as So. S. attempted to retrieve a passport from Song Ja Cha, Owner of the "Blue House". Song Ja Cha refused to return the passport to So.S. Song Ja Cha told So. S. that since she owned her money for a plane ticket and passport, she must sign a piece of paper, and then

-1-

Song Ja Cha would call the police. Hearing this threat, Elizabeth Aizawa and So. S. contacted Guam Police. Criminal Investigative Services ("CIS") received the complaint that Song Ja Cha was withholding a passport from the So. S. C.I.S. dispatched Officers, including an Officer fluent in the Chuukese language to the Blue House. Elizabeth Aizawa and So.S. were interviewed.

So. S. told the police that she was deceived into traveling to Guam to work at a restaurant job at the Blue House. Upon arrival, her passport was taken from her by In Han Cha, who handed it to Song Ja Cha. While in the Blue House, So.S. was instructed to sit in the kitchen and wait. So. S. realized that Blue House was not a restaurant, but a bar or nightclub. Song Ja Cha drove So.S. to a residence in Yigo, handed a man cash and left So.S. there. While at the residence, So.S. learned that the Blue House was place where young Chuukese girls were forced to perform sexual acts on male customers.

Guam Police Officers contacted Song Ja Cha at the Blue House. Song Ja Cha claimed she did not have So.S.'s passport. Song Ja Cha produced passports belonging to L.P., D.R., M.C., and Si.S. Song Ja Cha told Police that she possessed their passports because she was processing their health certificates and clearances. So.S. then asked the Police to bring out her two relatives – L.P. and M.C. Song Ja Cha stated there were no persons by those names in the Blue House. Officer Tan entered the Blue House and located L.P. and M.C. within the Blue House. They asked him to help D.R. and Si.S. get out of the Blue House. Officer Tan saw D.R. exit from a Comfort Room (#3) and noted a shirtless male, clinging to his unbuckled pants, and trying to hide behind a wall. Officer Tan spoke to the customer who stated that he was merely "kissing" D.R. because he was unable to afford sexual activity. D.R. later told Officer Tan that the customer paid $40 to engage in sexual activity and that he was touching her private parts, her vagina and breasts when Police arrived.

Each of the young women related that they were deceived into traveling to the Blue House believing they would be employed in a restaurant/waitress/store clerk capacity. Each of

the young women related that upon arrival in Guam, their passports were taken by Song Ja Cha, In Han Cha, Freda Eseun or Saknin Weria. Each of the young women related that they were locked within the Blue House, and coerced into engaging in sexual acts with male customers. The young women also related that food was withheld from them if they refused to perform sexual acts. They related that their phone calls were monitored, and that Freda Eseun and Saknin Weria enforced Song Ja Cha's instructions. They were very fearful of Song Ja Cha (known to them as "MamaSan") and In Han Cha (known to them as "PapaSan"). They also related that they were not permitted to contact their relatives or discuss what transpired at the Blue House. It is anticipated that Officers will testify that the property was seized approximately 8-9:00 a.m. on Sunday, January 13, 2008.

On January 13, 2008 at approximately 5:45 p.m., Freda Eseun was advised of her constitutional rights. (See Attached Exhibit "A"). Notably, the educational level of the defendant is listed "9th Grade JFK, 2002". Freda Eseun indicated through the use of interpreter Officer Bia A. Nanoto that she was employed at the blue House from 2006-2007. She quit her employment in September 2007 and returned to the Blue House in October 2007. She then made admissions that she engaged in sexual activities for monetary payment, that she monitors the other girls to make sure that they do not leave the Blue House, that she monitors their phone calls, and that she prevents them from running away. Other statements will be detailed in full at the suppression hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's "waiver of Miranda rights must be voluntary, knowing, and intelligent." Miranda v. Arizona, 384 U.S. 436, 479 (1966). A valid waiver of Miranda rights depends upon the "totality of the circumstances including the background, experience, and conduct of defendant." United States v. Bernard S., 795 F.2d 749 (9th Cir. 1986). The prosecution bears the burden of proving by a preponderance of the evidence that a defendant

-3-

knowingly and intelligently waived her Miranda rights. Colorado v. Connelly, 479 U.S. 157 (1986). To satisfy this burden, the prosecution must introduce sufficient evidence to establish that under the "totality of the circumstances," the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). "The following considerations guide our inquiry: (1) whether the defendant signed a written waiver. Bernard S., 795 F.2d at 752-753; United States v. Bautista-Avila, 6 F.3d 1360, 1365 (9th Cir. 1993); (2) whether the defendant was advised of his rights in his native tongue, see id.; United States v. Gonzales, 749 F.2d 1329, 1336 (9th Cir. 1984); (3) whether the defendant appeared to understand his rights, see id.; (4) whether a defendant had the assistance of a translator, see Bernard S., 795 F.2d at 752-753; (5) whether the defendant's rights were individually and repeatedly explained to him, see Derrick, 924 F.2d at 824; and (6) whether the defendant had prior experience with the criminal justice system, see Glover, 595 F.2d at 865.

  Here, each of these circumstances are present with the exception of prior criminal justice experience. First, defendant signed a written waiver. Defendant was read the Custodial Interrogation Form which was translated for her into her native language, the Chuukese language. She indicated that she understood her right to remain silent, that anything she said can and would be used against her in a court of law, that she had the right to counsel, that one could be afforded for her prior to questioning, and that if she answered questions now without her lawyer, she would have the right to stop answering at any time. In addition to placing her initials after each statement, she placed her signature under the statement: "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

  Defendant was advised her rights in her native tongue. The rights were advised to her by Officer Bia Nanoto, Guam Police Department. Defendant appeared to understand her rights and

had the assistance of a translator. The defendant's rights were read to her and explained to her. Defendant attended a U.S. high school, John F. Kennedy High School on Guam. She lives and works on Guam. It is anticipated that the testimony at the suppression hearing will demonstrate that the defendant's confession was voluntary under the totality of the circumstances test.

## CONCLUSION

The Government respectfully requests that defendant's Motion to Suppress be denied.

DATED this 9th day of May, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: /s/ Rosetta L. San Nicolas
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

-5-